IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2014

**STATE OF TENNESSEE v. DONALD KING**

**Appeal from the Criminal Court for Davidson County**
**No. 2009C2579     Mark J. Fishburn, Judge**

_____

**No. M2013-01530-CCA-R3-CD** - **Filed March 25, 2014**

_____

A Davidson County jury convicted the Defendant, Donald King, of sale of less than 0.5 grams of cocaine within 1,000 feet of a drug free school zone. The trial court sentenced the Defendant to twelve years in the Tennessee Department of Correction. On appeal, the Defendant contends that the trial court erred when it limited the scope of cross-examination of two witnesses, and that the evidence is insufficient to sustain his convictions. After a thorough review of the record and applicable authorities, we discern no error in the judgment of the trial court. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and JEFFREY S. BIVINS, JJ., joined.

Sean McKinney, Nashville, Tennessee, for the appellant, Donald King

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; Andrea Green, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's sale of 0.1 gram of crack cocaine to an undercover detective in a parking lot within 1,000 feet of a school. A Davidson County grand jury indicted the Defendant for the sale of less than 0.5 grams Schedule II controlled substance within 1,000 feet of a school.

At the Defendant's trial on this charge, the parties presented the following evidence: Tim Szymanski testified that he worked for the Metropolitan Nashville Police Department in the special investigations division, narcotics unit. He stated he had been in the specialized unit for four-and-a-half years and had been a police detective for fifteen years. Detective Szymanski testified that, on the day of the crime, he was working in an "undercover capacity" making "street-level buys" of crack cocaine in an area where the police department had received a lot of drug complaints. Detective Szymanski testified that he had training at basic narcotics detective school, as well as training at the Drug Enforcement Agency and the Tennessee Bureau of Investigation ("TBI"); he said that some of his training was specific to crack cocaine. He also had experience in buying crack cocaine undercover.

Detective Szymanski testified that on May 8, 2009, he drove to the area of Second and McCann in Nashville and pulled into a liquor store parking lot, where he spotted the Defendant, whom he identified in the courtroom. He stated that he gestured toward the Defendant to approach his vehicle, which the Defendant did. Detective Szymanski said that he had seen the Defendant before but that the Defendant was "not the target of an investigation at the time." When the Defendant walked up to Detective Szymanski's vehicle, he asked what the Detective was looking for, and Detective Szymanski said, "in street terms," that he was looking for twenty dollars worth of crack cocaine, a "20 rock." The Defendant responded that he knew where to get it and entered the detective's vehicle. Inside the vehicle, the Defendant said, "Please don't let you be a vice officer," to which Detective Szymanski responded he was not.

Detective Szymanski testified that the Defendant directed him to "24 Tremble," and, on the way, he talked with the Defendant about the "quality and quantity of the cocaine" that the Detective wanted to purchase. Detective Szymanski told the Defendant he wanted to "break it off fat," meaning the detective wanted to get a "good amount of cocaine" for his money. The Defendant "assured" him that would be the case. Detective Szymanski stated that quality is a known factor when purchasing cocaine for buyers who want to use the drug, as opposed to sell it.

Detective Szymanski testified that, when they arrived at the apartment building located at 24 Tremble, he gave the Defendant marked "buy money," and the Defendant went inside the apartment building. The detective recalled that the front door of one apartment was open, but he could not see inside. The Defendant went inside and returned to the vehicle with a "white rock-like substance" that he handed to the detective. The substance later field-tested positive for cocaine base. After he had the cocaine in his possession, Detective Szymanski gave the "take-down signal," and uniformed police in "raid gear" moved in to arrest the Defendant. He recalled that the crack cocaine was "field-tested, processed, put into

an evidence bag and submitted" into the department's booking room. Detective Szymanski testified that two glass crack pipes were recovered from the apartment at 24 Tremble.

A map of the "Second and McCann" area in Nashville was shown to Detective Szymanski, and he identified on the map where he picked up the Defendant, where 24 Tremble was located, and the route they traveled in his vehicle between the two points. When asked about a yellow ring and a red ring drawn onto the map, Detective Szymanski testified that an elementary school and a middle school were located within each of the rings and that 24 Tremble was also located within each of the rings.

On cross-examination, Detective Szymanski reiterated that, at the time of this incident, he was part of an "undercover drug operation" in an area where the police department had received complaints. He agreed that he waved the Defendant over to his vehicle and asked if he knew "where [the detective] could get some [.]" He agreed that the Defendant did not have drugs on his person during this initial encounter and did not have anymore on him after he handed the cocaine over. He agreed that the Defendant did not live at 24 Tremble.

Detective Michael Donelson testified that he worked for the Metropolitan Nashville Police Department and that he was working with Detective Szymanski on May 8, 2009. He stated that he was a "take-down officer," meaning that his job was to "chase down" and take into custody whomever sold the drugs to Detective Szymanski. Detective Donelson testified that, before the undercover operation, he photocopied the "buy money" for this deal. Based upon the previous photocopies, Detective Donelson confirmed that the money used in the buy was the same money found inside the apartment at 24 Tremble.

On cross-examination, Detective Donelson testified that he took a co-defendant in this case into custody and, in the process, recovered a crack pipe and the buy money. He agreed that no drugs were recovered from the co-defendant's person.

Cassandra Beavers testified that she worked as a forensic scientist at the TBI ; she was declared an expert by the trial court in the field of forensic chemistry. She testified that she received the drugs in this case in a sealed bag and tested the "white-rock substance[.]" She stated the result was "cocaine based schedule II, .1 grams."

William Crook testified that he was the assistant director of safety and security for the Metropolitan Nashville Public School District. He testified that Johnson School is located at 1200 Second Avenue South and was in session on May 8, 2009. He testified that Cameron Middle School is located at 1034 First Avenue South and was also in session on that day.

David Kline testified that he worked in the mapping division at the Metro Planning

Department and that, with a map generated by the Department's Geographic Information Systems computer system, he located 24 Tremble within the 1,000 foot buffer zones surrounding Johnson School and Cameron School. He testified that the 1,000 foot buffer zone is an "exact" measurement.

Based upon this evidence, the jury convicted the Defendant of sale of a Schedule II controlled substance within 1,000 feet of a school. The trial court found that the Defendant was a Multiple Offender and imposed a twelve-year sentence to be served at 100% in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant contends that: (1) the trial court improperly limited the cross-examination of two of the State's witness; and (2) the evidence is insufficient to sustain his conviction. The State responds that the evidence is sufficient to sustain the Defendant's conviction, as the evidence establishes the elements of the crime and supports the jury's verdict that it was the Defendant who conducted the sale. We agree with the State.

## A. Cross-examination of Witnesses

The Defendant asserts that the trial court improperly limited his cross-examination of two of the State's witnesses at trial. As the State notes in it's brief, the Defendant's brief contains no argument, or citation to the record or law supporting his contention. A defendant who fails to support his issues with argument or appropriate citations to the record and law waives the issue on appellate review. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). We conclude, therefore, that the Defendant is not entitled to relief on the basis of this claim.

## B. Sufficiency of the Evidence

The Defendant asserts that the evidence is insufficient to support his convictions because he did not "sell" the cocaine to the detective. The Defendant contends that he merely "assisted another" in the sale, and, thus, he was at most guilty of facilitation. He further contends that he was not in "actual possession" of the controlled substance. The State responds that the evidence was sufficient to support the jury's verdict.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). When a jury convicts a defendant of the greater offense charged, as opposed to the lesser-included offenses, the jury has necessarily rejected all of the lesser-included offenses. *State v. Banks*, 271 S.W.3d 90, 126 (Tenn. 2008) (citing *State v. Locke*, 90 S.W.3d 663, 672 (Tenn. 2002); *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002); *State v. Williams*, 977 S.W.2d 101, 106 (Tenn.1998)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523

(Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Tennessee Code Annotated provides that it is an offense for a person to knowingly sell a controlled substance. T.C.A. § 39-17-417(a)(3) (2010). Cocaine is a Schedule II controlled substance. T.C.A. § 39-17-408. Knowingly is defined as when a person acts "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). "A violation of § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." T. C. A. § 39-17-432(b)(1). In essence, the statute creates a "buffer zone" of one thousand feet around schools. *Id.*

We conclude that this evidence is sufficient to establish that the Defendant knowingly sold a Schedule II controlled substance to an undercover officer within 1,000 feet of two schools. The Defendant and an undercover officer had a conversation in a parking lot, during which the officer indicated he wanted to buy cocaine. The Defendant said he knew where to get it, and offered to take the officer to the location. Once there, the Defendant took the officer's money, went into an apartment with the money and returned with a white substance that he gave to the detective. The white substance was later identified as cocaine. An employee of the Metropolitan Planning Department testified that the location where the sale took place was within 1,000 feet of two schools. Accordingly, we conclude that there was sufficient evidence to support the jury's finding that the Defendant was guilty beyond a reasonable doubt of sale of a Schedule II controlled substance within 1,000 feet of a school. Because the jury convicted the Defendant of the greater offense charged, it necessarily rejected the lesser-included offense of facilitation. *See Banks*, 271 S.W.3d at 126. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the record and aforementioned authorities, we conclude that the evidence is sufficient to sustain the Defendant's conviction. We, therefore, affirm the judgment of the

trial court.

_____
ROBERT W. WEDEMEYER, JUDGE